989 F.2d 1021
 Elsie BREWER, individually and as next friend of John George
Brewer, Petitioner-Appellant,
v.
Samuel LEWIS, Director of the Arizona Department of
Corrections, et al., Respondents-Appellees,
John George Brewer, Real Party In Interest.
 No. 93-99003.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 1, 1993.
Decided March 2, 1993.
 
 Robert Bartels, Arizona State University College of Law, Tempe, AZ, for petitioner-appellant.
 Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Office of the Atty. Gen., Phoenix, AZ, for respondents-appellees.
 Lisa M. Sommer, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, AZ, for the real party in interest.
 Appeal from the United States District Court for the District of Arizona.
 Before: BROWNING, NORRIS, and HALL, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Elsie Brewer seeks to appeal the district court's denial of her petition for habeas corpus and motion for stay of execution filed on behalf of her son, John Brewer, who is scheduled to be executed on Wednesday, March 3, 1993.
 
 I. FACTUAL BACKGROUND
 
 2
 A complete description of Brewer's offense and the state court proceedings appears in State v. Brewer, 170 Ariz. 486, 826 P.2d 783 (1992). On November 19, 1987, Brewer was indicted for the murder of Rita Brier. In July 1988, Brewer expressed his desire to plead guilty to the charge. The trial court held a hearing to determine whether Brewer understood his rights and the consequences of his plea, and to determine if he was competent to ignore the advice of his attorney and plead guilty. The state trial court had before it the reports of Dr. Gerstenberger and Dr. Bayless stating that Brewer was competent to enter a plea. At the hearing, the trial judge questioned Brewer at length and heard from his trial attorney. The court concluded:
 
 
 3
 On the basis of the record I find that the defendant knowingly, intelligently and voluntarily enters into a plea of guilty to the charge of First Degree Premeditated Murder. That there is a factual basis for it.
 
 
 4
 I find that upon review of the psychological reports, the demeanor of the defendant, his responses to the court's inquiries, his full understanding of consequences of the sentencing options available to the court, and there being only two, Mr. Brewer. Further in light of his education he has versed himself fairly in legal procedures and he does understand the complexities of this case.
 
 
 5
 Based upon all of the foregoing I hereby accept the plea of guilty.
 
 
 6
 The court, over Brewer's objections, ordered Brewer's trial counsel to present mitigation evidence at the sentencing hearing. At the sentencing hearing, the state presented evidence that the victim suffered great pain. Brewer's attorney called the jail pastor to testify that originally Brewer expressed bewilderment and remorse for his actions. Brewer's attorney also called Dr. Bayless to testify in mitigation. Dr. Bayless testified that Brewer was legally competent and has an IQ of 132. He stated that Brewer showed no signs of hallucinations or delusions. However, Dr. Bayless stated that Brewer had a dependency on his mother and a phobia of being alone. He stated further that when Rita Brier told Brewer that she was going to leave him, Brewer's willingness to look at reasonable solutions and to depend on himself became impaired, and he lashed out in anger and killed her. Dr. Bayless stated, though, that Brewer was oriented to reality and definitely had a capacity to appreciate the difference between right and wrong.
 
 
 7
 Brewer addressed the court at length, and said that he killed Rita Brier and that he believed execution was the only proper punishment for the premeditated murder of which he was guilty. The sentencing court found the aggravating factor that the murder was committed in an especially heinous, cruel and depraved manner, and that Brewer's capacity to appreciate the wrongfulness of his conduct was not impaired. The court found that the evidence and argument in mitigation was insufficient to outweigh the aggravating circumstances, and imposed a sentence of death.
 
 
 8
 Brewer then filed a letter with the Arizona Supreme Court requesting that he be allowed to abandon all appeals. The Arizona Supreme Court denied his request because a direct appeal in a capital case is mandatory under Arizona law. Brewer, 170 Ariz. at 493, 826 P.2d at 790. The court affirmed Brewer's conviction and sentence, stating with respect to Brewer's competency that there was "sufficient evidence to conclude that [Brewer's] ability to make rational choices and to understand the attendant consequences was not substantially impaired at the time of the guilty plea." Id. 826 P.2d at 793.
 
 
 9
 Brewer's attorney filed a petition for certiorari without Brewer's knowledge or consent. After the United States Supreme Court denied certiorari, --- U.S. ----, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992), and pursuant to the Arizona Rules of Criminal Procedure, the clerk of the Arizona Supreme Court filed an automatic notice of post-conviction relief on November 6, 1992. Brewer then filed a motion to dismiss the post-conviction relief, and on November 23, 1992, the trial court held a hearing on Brewer's motion.
 
 
 10
 At that hearing, the trial judge addressed Brewer personally, and after assuring himself that Brewer understood his right to have counsel, found Brewer competent to represent himself in the proceeding. Brewer's former attorney requested that a competency hearing be held in light of an affidavit from a Dr. Rollins stating that Brewer was not competent to proceed. Dr. Rollins's affidavit was not based on a personal examination of Brewer, was inconsistent with the opinions of two experts who had examined Brewer, was contrary to the trial court's previous holding and the Arizona Supreme Court's finding on appeal, and was not supported by any reports from the Arizona Department of Corrections, which is required by law to file a statement in state court if it determines Brewer has a psychological problem. The trial court ruled that Brewer's competency "has already been determined. It has already been addressed by the Supreme Court of this state. I do not see sufficient information in the Affidavit of Dr. Rollins to change my position, nor do I suspect that the Supreme Court would change its position." After extensively examining Brewer regarding his request to dismiss the state post-conviction relief proceedings, the trial court found Brewer competent to file the motion to dismiss and granted the motion. The Arizona Supreme Court then issued a warrant of execution for March 3, 1993.
 
 
 11
 Thereafter, Brewer's mother filed her petition in the district court as next friend of Brewer, which we review herein. The district court, after hearing evidence, determined that Elsie Brewer
 
 
 12
 has failed to sustain her burden [of proving that she has standing] and thus the Court lacks jurisdiction to act on the motion for stay of execution and it lacks jurisdiction to act upon the petition for writ of habeas corpus on behalf of a person in state custody. And accordingly, the motion for stay and the petition for writ are denied.
 
 Elsie Brewer then appealed to this court.[1]
 
 13
 II. PETITIONER IS NOT ENTITLED TO AN AUTOMATIC STAY UNDER NINTH CIRCUIT RULE 22-3
 
 
 14
 We must first consider whether this case qualifies for an automatic stay of execution under our Circuit Rule 22-3(c), which provides:
 
 
 15
 On the first petition [for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 for a petitioner under a sentence of death],[2] if a certificate of probable cause and a stay of execution have not been entered by the district court ... upon application of the petitioner a certificate of probable cause will be issued and a stay of execution will be granted by this court pending the issuance of its mandate.
 
 
 16
 The issue here is whether petitioner Elsie Brewer, as purported next friend of John Brewer, qualifies as the "petitioner" for purposes of our rule prior to establishing her standing as a next friend. We hold that she does not. Until Elsie Brewer demonstrates that she has standing to bring a petition on behalf of her son, she may not obtain an automatic stay of the execution of Brewer over his strong objections. To interpret the rule as providing for the entry of a stay at the request of a "next friend' without a showing that the defendant is unable to act on his own behalf would be inconsistent with the holding in Demosthenes v. Baal, 495 U.S. 731, 737, 110 S.Ct. 2223, 2226, 109 L.Ed.2d 762 (1990), that "[b]efore granting a stay, ... federal courts must make certain that an adequate basis exists for the exercise of federal power."
 
 
 17
 The dissent to this order asserts that we are "reading language into the rule" on first petitions. We read nothing into the rule. We simply apply the rule in light of the fundamental principle of jurisdiction that a party must have standing to litigate in federal court. A grant of a stay is an exercise of judicial power, and we are not authorized to exercise such power on behalf of a party who has not first established standing. See Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204-05, 45 L.Ed.2d 343 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). Standing determines the power of the court to entertain a suit. Id.
 
 
 18
 The dissent further contends that we have decided the "merits" of the petitioner's claim, and that this indicates we acknowledge she has made a colorable claim of standing. We have simply decided under relevant Supreme Court authority that the district court correctly concluded that petitioner has failed to establish her standing to petition the federal courts. Standing is a jurisdictional question that must be addressed at the threshold of any case.
 
 
 19
 Finally, the dissent's citation to Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), does not support the argument that we have jurisdiction to consider petitioner's appeal. That case did not concern standing but rather the question whether the plaintiff had stated a cognizable cause of action. The Supreme Court has never cited Bell for the proposition that a party has standing as long as her claim is not "wholly insubstantial."
 
 
 20
 III. PETITIONER HAS FAILED TO ESTABLISH HER STANDING
 
 
 21
 The district court held a hearing on February 23, 1993, for the purpose of determining whether petitioner has standing as next friend of John Brewer, and correctly concluded she does not. The facts of the present case are closely analogous to those presented to the Supreme Court in Baal, 495 U.S. at 731, 110 S.Ct. at 2223. In Baal, the defendant's parents filed a habeas petition in the district court hours before Baal's scheduled execution. The only evidence the petitioners presented in support of their petition was the affidavit of a psychiatrist who had not examined Baal, and who opined that Baal "may not be competent to waive his legal remedies." Id. 495 U.S. at 736, 66 S.Ct. at 2225 (emphasis in original). The district court then conducted a hearing, after which it concluded that petitioners failed to establish their standing as next friends. Id. at 733, 66 S.Ct. at 2224. Upon review of the record, the district court found that all the evidence, other than the newly submitted affidavit, established Baal's legal competence, and that the affidavit was conclusory and lacking in sufficient foundation to warrant additional examination of Baal. The Supreme Court ultimately held that because petitioners had not come forward with "meaningful evidence" of Baal's incompetence, the district court correctly found that petitioners had not established standing, and correctly denied their request for a further evidentiary hearing on the question of Baal's competence to waive his right to proceed. Id. at 736, 66 S.Ct. at 2225.
 
 
 22
 The hearing which the district court below held on February 23, 1993, was analogous to the hearing which the district court held in Baal. The hearings in both cases provided the petitioners an opportunity to attempt to establish their standing. The district courts in both instances found that the petitioners had not presented sufficient evidence to establish standing. In Baal, the Supreme Court held that because the petitioners had not supplied the "meaningful evidence" necessary to support their claim of standing, they were not entitled to a further evidentiary hearing to explore the question of the defendant's competence. In the present case, because Ms. Brewer has likewise not presented such "meaningful evidence," she was not entitled to a further evidentiary hearing on her son's competence, and therefore the district court did not abuse its discretion by denying her additional time to examine Brewer or conduct other discovery.[3]
 
 
 23
 The district court determined that petitioner did not meet her "burden of proving by clear evidence" that the defendant is incompetent to waive his appellate rights.[4] The standard which the district court applied in reaching its determination is consistent with the Supreme Court's declaration in Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), that the "burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." Id. at 164, 110 S.Ct. at 1727-28 (emphasis added). In order to clearly establish standing, a petitioner must present "meaningful evidence that [the defendant] was suffering from a mental disease, disorder, or defect that substantially affected his capacity to make an intelligent decision." Id. at 166, 110 S.Ct. at 1728-29. The Court reiterated this requirement in Baal. 495 U.S. at 736, 110 S.Ct. at 2225-26.
 
 
 24
 The district court did not err in determining that Ms. Brewer failed to clearly establish her standing, because the record shows that she did not provide the meaningful evidence which Whitmore and Baal demand. The evidence which she submitted is indistinguishable from that which the petitioners submitted in Baal, and which the Supreme Court found insufficient. In Baal, the petitioners presented an affidavit of a psychiatrist who had reviewed and disagreed with reports of experts who had examined Baal and found him competent, but who had never personally observed Baal. Id. at 735-36, 110 S.Ct. at 2225-26. Here, petitioner has submitted brief affidavits of two doctors who have never met Brewer, as well as an affidavit of Dr. Bayless, who examined Brewer and found him competent in 1988. Dr. Bayless speculates, based on information not available to him at that time, that Brewer's mental condition may have deteriorated during his incarceration, and that Brewer may now suffer from a major depressive disorder.[5] As in Baal, this conclusory evidence is insufficient to outweigh the substantial evidence in the record demonstrating the defendant's competence. Within the last two and one-half months, no less than four psychological experts have personally examined and tested Brewer and found him competent.[6]IV. THE ARIZONA STATE COURT'S DETERMINATIONS OF BREWER'S COMPETENCE ARE ENTITLED TO A PRESUMPTION OF CORRECTNESS
 
 
 25
 Our conclusion that Elsie Brewer has not established standing as next friend of John Brewer is bolstered by our obligation to accord a presumption of correctness to the state court's determinations of his competence. The Supreme Court has held that a state court's conclusion regarding a defendant's competence is due such a presumption where it is "fairly supported by the record." Baal, 495 U.S. at 735, 110 S.Ct. at 2225; Maggio v. Fulford, 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983).
 
 
 26
 The state court's July 1988 determination that Brewer was competent to plead guilty is without question supported by the record. The state court's conclusion was based upon psychological reports from Dr. Bayless and Dr. Gerstenberger which evaluated Brewer's competence to stand trial as well as his mental condition at the time of the offense. Furthermore, the state court conducted an in court colloquy with Brewer concerning his desire to plead guilty and his understanding of his circumstances.
 
 
 27
 On November 23, 1992, the state trial court again found Brewer competent, in a hearing on Brewer's motion to dismiss an automatic notice of post-conviction relief. At this hearing, the court itself extensively examined Brewer concerning his reasons for wishing to forego post-conviction relief proceedings. In light of Brewer's statements in court, and based upon its review of the entire record, the state court concluded that it found no reason to change its previous finding that Brewer was competent to act on his own behalf. Hearing of Nov. 23, 1992, R.T. at 45. The court found further that an affidavit of Dr. Rollins submitted by Brewer's former counsel was insufficient to raise questions concerning Brewer's competence. Id. at 25. The two and a half page affidavit suggests in a conclusory fashion that further psychological examination of Brewer is needed to determine his competence. Considering the complete absence of contrary evidence, we must conclude that the state court's determination of Brewer's competence at the November 1992 hearing was fairly supported by the record, and therefore entitled to a presumption of correctness. See Lenhard v. Wolff, 603 F.2d 91, 93 (9th Cir.1979) (a determination of competence remains valid where, even though time has elapsed, there has been no showing of incompetence).
 
 
 28
 We note further that additional evidence of Brewer's psychological condition gathered within the last two and a half months corroborates the state court's determinations. Four psychological experts who have personally examined Brewer have determined that he is competent, and this evidence has been presented in various filings with the Arizona courts, the district court below, and this court on appeal.
 
 
 29
 Because we presume that the state court correctly determined Brewer to be competent, and because petitioner has not come forward with meaningful evidence to undermine that determination, we must conclude that she has failed to "provide an adequate explanation" why Brewer cannot appear on his own behalf. Whitmore, 495 U.S. at 163, 110 S.Ct. at 1727.
 
 V. CONCLUSION
 
 30
 Accordingly, we affirm the judgment of the district court and dismiss Ms. Brewer's appeal for lack of jurisdiction. The application for certificate of probable cause and the motion for stay of execution are denied.
 
 WILLIAM A. NORRIS, Circuit Judge, dissenting:
 
 31
 * Mrs. Elsie Brewer appeals the district court's decision denying her standing to file a "next friend" petition for habeas corpus seeking to avoid her son's execution principally on the ground that he is incompetent. She asks this court to issue a certificate of probable cause and a stay of his execution, now scheduled for March 3, 1993, at 12:01 a.m.
 
 
 32
 On February 19, 1993, the day after she was finally denied relief from the state courts in Arizona, Mrs. Brewer filed a habeas petition with the district court. This is the first federal petition for relief that has been filed on behalf of this prisoner.
 
 
 33
 Ninth Circuit Rule 22-3 explicitly provides that a certificate of probable cause and a stay of execution shall be granted automatically on an appeal from the first federal habeas corpus petition filed in a death case. The Rule provides:
 
 
 34
 (a) Definitions. This rule shall apply to appellate proceedings involving a first petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 for a petitioner under a sentence of death. A "first petition" for habeas corpus shall mean: the original filing relating to a particular conviction or sentence, and a subsequent or amended filing if the original filing was not dismissed on the merits.
 
 
 35
 . . . . .
 
 
 36
 (c) Stays of Execution and Certificates of Probable Cause. On the first petition, if a certificate of probable cause and a stay of execution have not been entered by the district court or if the district court has issued a stay of execution that will not continue in effect pending the issuance of this court's mandate, upon application of the petitioner a certificate of probable cause will be issued and a stay of execution will be granted by the special state death penalty panel pending the issuance of its mandate.
 
 
 37
 By the plain language of this rule, we have no authority to deny Mrs. Brewer's request for a certificate of probable cause and a stay of her son's execution.
 
 
 38
 The majority of this panel justifies its refusal to comply with the clear directive of this rule by reading language into the rule that does not appear. Under the majority's interpretation, the automatic stay rule for first petitions does not apply to third-party petitioners when the panel decides that it can resolve the merits of petitioner's claim in time to meet the scheduled execution date. The Rule says no such thing. The Rule plainly applies to all "first petition[s] filed ... for a petitioner under a sentence of death." This rule was adopted by the Court after considerable deliberation and comment. If the majority is dissatisfied with this particular rule, it may address its concerns to the Court and seek an amendment. The power to revise the Circuit Rules rests with the Court, not an individual panel.
 
 
 39
 Moreover, the majority's amendment is fundamentally inconsistent with the purpose behind the automatic stay rule. The purpose of the automatic stay rule is to allow time for the appellate court to exercise reasoned judgment when it is faced, for the first time, with a death case. It requires us to exercise deliberate judgment at least once in a death case without the hydraulic pressure of an impending execution only days, or even hours, away.
 
 
 40
 The only gloss on Rule 22-3 that is even arguably justified is that we have no jurisdiction to consider the merits of Mrs. Brewer's appeal if her standing claim is "wholly insubstantial." See Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (dismissal for want of jurisdiction is appropriate when the claim is "wholly insubstantial" or "patently without merit.") The majority does not say that her standing claim is so insubstantial that it gives no jurisdiction to decide her appeal. Indeed, by reaching and deciding her claim on the merits, the majority holds that she has raised at least a colorable claim that she can establish standing. Moreover, the district court found that she had raised a colorable claim because it ruled that she was entitled to an evidentiary hearing on the question of her son's competency. Unless the majority is willing to declare her claim to be frivolous, it must comply with Rule 22-3 by allowing the automatic stay of execution to issue to permit us to consider the merits of the standing claim without the pressure of an imminent execution.
 
 
 41
 The complexity of the issues raised in this case demonstrates the wisdom of our automatic stay rule. This is not a case of federal court delay. The case was filed in the district court for the first time less than three weeks ago. The notice of appeal to this court was filed exactly two weeks ago. As I write, Mr. Brewer's scheduled execution is less than 24 hours away.
 
 II
 
 42
 In November of 1987, John George Brewer ("Brewer") murdered his five-month pregnant girlfriend and immediately confessed and pled guilty. After a hearing, he was pronounced competent and sentenced to death. For the next four and a half years he languished on death row while the state courts of Arizona conducted various proceedings, notwithstanding Brewer's refusal to challenge his death sentence and his repeated insistence that his execution be carried out. On November 23, 1992, the state trial court conducted another hearing and again pronounced him competent to dismiss counsel and to waive all post-conviction review. Finally, on February 18, 1993, the Arizona Supreme Court affirmed the state court proceedings.
 
 
 43
 On February 19, 1993, this case entered the federal court system for the first time when Brewer's mother filed a "next friend" habeas petition challenging her son's competency as well as the constitutionality of his sentence. On February 23, 1993, the federal district court, following an afternoon hearing, ruled that Mrs. Brewer had no standing to pursue a "next friend" habeas petition. On the same day she filed a notice of appeal and asked this court to issue a certificate of probable cause and a temporary stay of execution. Arizona has scheduled his execution for March 3, 1993 at 12:01 a.m.
 
 
 44
 Mrs. Brewer supported her habeas petition with new evidence not considered at the November 23rd state court competency hearing:[1]
 
 
 45
 (1) Two letters written by her son while he was on death row, discussing his belief in a planet called "Terracia," which is ruled over by the God "Dantain." The letters refer to a person called "Fro," who appears to be Dantain's child, and who lives on Terracia, but who also lived on earth, at which time she was Rita Brier, the girlfriend Brewer murdered.
 
 
 46
 (2) An affidavit by Dr. Michael Bayless, who, after reviewing Brewer's letters along with other new materials, had a change of heart about the testimony that he gave at a 1988 state court hearing in which he concluded that Brewer was competent.[2]
 
 
 47
 In the first letter, written to a friend, Keith Lester, in early 1989, Brewer wrote in part as follows:
 
 
 48
 "I am the one who killed Fro, the savior of Terracia."
 
 
 49
 Fro was to "become a man elf when we got to Terracia. However, I knew her ... only as a woman."
 
 
 50
 "It is hard to explain what I understand Dantain's teachings to be, and my reaction to them."
 
 
 51
 "Dantain told me I would be executed in 1-7 years"
 
 
 52
 "I keep finding myself praying to Christ to forgive me worshipping other Gods."
 
 
 53
 Brewer ends the letter with, "May the Blessings of Dantain, Our Lord God, and Fro, His Holy Son--our savior be upon thee."
 
 
 54
 See Dist.Ct. Exh. 5.
 
 
 55
 The second letter was written in early 1992, and states, "I killed Fro because she was going to follow Dantain's command for me to live separate of (not from) her, and I didn't want to." See Dist.Ct. Exh. 6.
 
 
 56
 In addition to this new evidence, Mrs. Brewer also relied upon an affidavit by Brian McKee, a friend of her son's from high school. McKee states that Brewer told him that he believed Dantain is the God of Terracia, and that when he dies he will go to Terracia where Rita is waiting for him. McKee also says Brewer claimed that Dantain would speak to Brewer and Rita through each other. See McKee Affidavit at 2-3.
 
 
 57
 At 6:00 p.m. on February 19, 1993, a Friday, the district court gave notice that it would conduct a hearing on Mrs. Brewer's habeas petition on the afternoon of the following Tuesday, February 23, 1993. On the morning of the hearing, the court issued an order granting Mrs. Brewer a right to discovery of the notes and data on which the state-retained mental health experts based their opinion of Brewer's competency, and a right to have Brewer examined by Dr. Bayless. After issuing the discovery order, the court proceeded with the hearing that afternoon, which, of course, rendered the discovery order meaningless for purposes of the afternoon's hearing.
 
 III
 
 58
 The questions raised by Mrs. Brewer's appeal are the following:
 
 
 59
 A. Is the State Court's Finding of Competence at the November 23, 1992 Hearing Entitled to a Presumption of Correctness?
 
 
 60
 The majority asserts that the state court's finding on November 23, 1992 that Brewer was competent to dismiss his counsel and waive all post-conviction relief should be entitled to a presumption of correctness on federal habeas review. I disagree.
 
 
 61
 A finding on the issue of competence is a finding of fact. A presumption of correctness attaches to state court findings of fact only when the court made its findings after a full, fair, and adequate hearing. 28 U.S.C. § 2254(d)(6). The November 23 hearing was neither full, fair nor adequate. The state court had before it an affidavit from Dr. Rollins, in which he stated that he was persuaded "to a reasonable degree of medical certainty that Mr. Brewer is not competent to participate in legal proceedings at the present time." District Ct. Exh. B at 2. Yet the court rejected Dr. Rollins' affidavit, even though it heard no testimony from any medical professionals on Brewer's current mental status. The court's finding on Brewer's competence was based entirely on a brief colloquy with the prisoner and on the state court's original determination made four years earlier that Brewer was competent.
 
 
 62
 The court's deference to a four year old finding of fact is particularly troubling, because the question of competency is not a question of historical fact but a question that fluctuates over time. The relevant question for purposes of third-party standing is not whether Brewer was competent before he spent four years on death row waiting for Arizona to finish judicial proceedings Brewer did not want or seek, but whether he is competent now to waive his right to any further legal proceedings. Because the state court failed to adequately explore the question of current competency, the state court's determination is not entitled to a presumption of correctness in federal court.[3]
 
 
 63
 Finally, the majority relies on Demosthenes v. Baal, 495 U.S. 731, 737, 110 S.Ct. 2223, 2226, 109 L.Ed.2d 762 (1990) as authority for accepting the state court's finding of competency, arguing that Baal and this case are indistinguishable. I believe the two cases are plainly distinguishable. The "next friend" petitioner in Baal relied on the same evidence that was considered at the state court competency hearing. Here, Mrs. Brewer produced several pieces of new evidence--specifically including Brewer's letters and Dr. Bayless' testimony concerning his change of heart on Brewer's competency--that were never considered at the state court hearing.
 
 
 64
 B. Did the District Court Apply the Correct Standard of Proof?
 
 
 65
 The district court appears to have held Mrs. Brewer to the "clear and convincing" standard of proof on the competency issue. ("The Court's obligation under the case law, as the Court understands it, is to view that evidence in the context of whether or not the petitioner, Elsie Brewer, has sustained her burden of proving by clear evidence that [Brewer is incompetent]. The Court finds that the petitioner has failed to sustain her burden...." Transcript of Dist.Ct.Hrg. at 112). This raises a question whether the court erred in not applying the much less rigorous preponderance of the evidence standard. Mrs. Brewer cites Groseclose ex rel. Harries v. Dutton, 594 F.Supp. 949, 953 (M.D.Tenn.1984) as authority that the correct standard is preponderance of the evidence. Neither the State nor Brewer cites any authority whatsoever on the issue. Under the time constraints of the execution schedule, I cannot be confident which is the right standard. But I'm inclined to think Mrs. Brewer is correct that on a threshold jurisdictional question such as standing, the preponderance of the evidence standard is the appropriate one.
 
 
 66
 The majority's reliance on Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) for the proposition that a "clear evidence" test (presumably one higher than a preponderance of the evidence) is the correct standard to apply at a competency hearing is entirely misplaced. Whitmore did not address the standard of proof a district court should use in making a determination on the ultimate question of competency. In Whitmore, the third-party petitioner was a fellow prisoner who proffered no evidence whatsoever that would cast doubt on the state court's determination of competency. Whitmore's use of the words "meaningful evidence" refers to the threshold showing Mrs. Brewer would be required to make in order to get an evidentiary hearing on the issue of competence. Whitmore clearly did not involve the question of the standard of proof applicable at the hearing on competence granted to Mrs. Brewer by the district court. Finally, although the Court said a "next friend" petitioner has the burden "clearly to establish the propriety of his status," it did not announce a standard of proof by which a prisoner's incompetence should be judged. In fact, the Court cited with approval the case of Groseclose ex rel. Harries v. Dutton, supra--a case holding that a preponderance of the evidence is the proper standard to apply in determining the prisoner's competence, and the only case cited to us on the issue.
 
 
 67
 If the district court applied the incorrect standard, which I believe it did, then the case should be remanded so the district court as the finder of fact can re-evaluate the evidence on competency under the correct standard of proof.
 
 
 68
 C. Even if the District Court Decided Brewer's Competence Under the Proper Legal Standard, Was Mrs. Brewer Afforded a Full and Fair Hearing?
 
 
 69
 In my view, the district court did not afford Mrs. Brewer a full and fair hearing on her son's competency. The record shows "there was not sufficient opportunity for proper psychiatric and psychological evaluation of [Mr. Brewer]." Hays v. Murphy, 663 F.2d 1004, 1011 (10th Cir.1981).
 
 
 70
 Whether the district court hearing was adequate turns mainly on whether the district court abused its discretion in failing to give petitioner a fair opportunity to make use of the court's discovery order, particularly the opportunity for Dr. Bayless to examine Brewer. The lack of time to do anything with the discovery order rendered the hearing unfair for two reasons. First, it rendered Dr. Bayless unable to express a definitive medical opinion on the ultimate issue of Brewer's competence. Without an opportunity to examine Brewer, Dr. Bayless was only able to testify that, based on evidence not available to him when he testified in 1988 that Brewer was competent, he now had "serious questions" as to the validity of his original opinion. Second, without the assistance of an expert who had an opportunity to examine Brewer, counsel for petitioner was, as any lawyer would be, handicapped in his efforts to cross-examine the state's mental health experts.
 
 CONCLUSION
 
 71
 In conclusion, even without the automatic stay rule, I would issue a temporary stay on any one of the following grounds: (1) that the stay is necessary to preserve our jurisdiction by giving us a fair opportunity to resolve the standing issues raised by petitioner (see 28 U.S.C. § 1651); (2) that we should remand to the district court for a redetermination of the issue of competency under the preponderance of the evidence standard; and (3) that the case should be remanded to the district court to conduct a new competency hearing after Mrs. Brewer has a reasonable opportunity to have Dr. Bayless examine her son and engage in other discovery as authorized by the court's discovery order.
 
 
 72
 The argument is made that we should not take a reasonable time to consider Mrs. Brewer's appeal because any additional delay in her son's execution would frustrate the state's plan to execute him on March 3rd and would only add to Mr. Brewer's anguish waiting for the death he says he wants. But to the extent this execution has been delayed, however, it is not the fault of the federal court system; the district court and appellate courts combined have had this case for less than three weeks. The blame, if any, rests with the State of Arizona, which, over Mr. Brewer's continuous objection, has taken four and a half years to schedule his execution.
 
 
 73
 A human life is at stake. I fail to understand the rush to judgment. This is not, after all, a successive petition, and no one suggests that in filing a first petition, Mrs. Brewer has abused the Great Writ.
 
 ORDER
 
 74
 The petitioner's request for a certificate of probable cause and stay of execution is GRANTED.
 
 
 
 [1]
 The court also held Ms. Brewer lacks individual standing to move for a stay of her son's execution. Ms. Brewer does not appear to raise this argument on appeal, and we are not aware of any authority that would support her claim to individual standing, as distinguished from standing as "next friend" based on her son's incompetence. See Whitmore v. Arkansas, 495 U.S. 149, 165, 110 S.Ct. 1717, 1728, 109 L.Ed.2d 135 (1990) ("one necessary condition for 'next friend' standing in federal court is a showing by the proposed 'next friend' that the real party in interest is unable to litigate his own cause due to mental incapacity ..."); Gilmore v. Utah, 429 U.S. 1012, 1014, 97 S.Ct. 436, 437-38, 50 L.Ed.2d 632 (1976) (Burger, C.J., concurring) ("The only possible exception to this conclusion [that Mrs. Gilmore does not have standing] would be if the record suggested ... that [her son] was incompetent to waive his right of appeal.")
 
 
 [2]
 Circuit Rule 22-3(a) provides that the automatic stay rule "shall apply to appellate proceedings involving a first petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 for a petitioner under a sentence of death. A 'first petition' for habeas corpus shall mean: the original filing relating to a particular conviction or sentence, and a subsequent or amended filing if the original filing was not dismissed on the merits."
 
 
 [3]
 Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts explicitly leaves the decision whether to permit discovery to the discretion of the district court
 
 
 [4]
 The Supreme Court stated the test for determining whether a habeas petitioner is competent to waive his right to federal review of his conviction and sentence in Rees v. Peyton, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506-07, 16 L.Ed.2d 583 (1966):
 whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity....
 
 
 [5]
 Dr. Alexander Don, an independent psychiatrist retained by the state, examined Brewer in early February 1993, and specifically concluded that Brewer evidenced very little mental deterioration due to his five-year incarceration and "does not manifest any signs of a psychotic illness."
 
 
 [6]
 The only evidence that the state's experts did not consider was two letters written by Brewer in which he appears to assert a belief that Rita Brier is now living on another planet, and that he will join her there after his execution. During Dr. Don's examination of him, Brewer specifically denied that he believes in the existence of this planet, although he admitted his religious beliefs are unusual. Dr. Don did not review Brewer's letters, but testified at the district court hearing that Brewer's belief that he would join Brier in an afterlife was not "indicative of any mental instability or problem." These religious beliefs, including the existence of the planet Terracia, did not emerge for the first time in the two letters, but had been a part of Brewer's discussions and beliefs long prior to the murder
 Ms. Brewer also presented affidavits from several friends and family members, all of whom agreed Brewer had a difficult childhood and showed signs of mental disorder from an early age. These statements do not contradict the district court's findings. The four experts who examined Brewer determined he suffers from a personality disorder, but all agreed that Brewer is competent.
 
 
 [1]
 Mrs. Brewer presented much of this new evidence to the state courts promptly after he was found competent at the November 1992 hearing. Neither Arizona nor Mr. Brewer claims she had any obligation to seek "next friend" relief for her son before that competency determination was made
 
 
 [2]
 Dr. Alexander Don, who testified for the state at the district court hearing, formed his opinion that Mr. Brewer was competent without having read his letters. Dist.Ct. Transcript at 78. Interestingly, Dr. Don disagreed with Dr. Celia Drake, another doctor who submitted testimony for the state, on a significant element of her diagnosis. Id. at 68. Even though Dr. Drake concluded that Mr. Brewer was competent to be executed, she found that he had a "long history of emotional problems with a history of depression and suicide attempts that resulted in mental health intervention." Drake Affidavit at 19, 21. Dr. Don cited a scholarly test "regarding the stressful experience on death row and the likelihood that an individual who is sentenced and is awaiting execution may well decompensate into a psychotic state," but found no indication that this had happened in Mr. Brewer's case. Dist.Ct. Transcript at 62
 
 
 [3]
 The majority cites Lenhard v. Wolff, 603 F.2d 91 (9th Cir.1979) as authority for also giving the 1988 finding of competency a presumption of correctness. In Lenhard, however, the state court hearing was held in 1978 and the federal court hearing in 1979. Here, the elapsed time was over four years--four years on death row. Moreover, in Lenhard there was no new evidence indicating incompetence. Here the federal court was presented with new evidence not available at the 1988 hearing--specifically, Brewer's letters, Dr. Bayless' recantation of his 1988 testimony, and Dr. Rollins' and Dr. Heller's affidavits, all of which raised doubts about Brewer's current mental status