David Edwin MASON, By and Through Charles C. MARSON, Petitioner–Appellant,

v.

Daniel E. VASQUEZ, Warden of the California State Prison at San Quentin, Respondent–Appellee.

David Edwin MASON, Petitioner,

Randy Alana, Patrick Tafoya and Lee Terry Farmer, as next friends of David E. Mason, Applicants in intervention/Appellants,

v.

Daniel B. VASQUEZ, Warden of the California State Prison at San Quentin, Respondent–Appellee.

Nos. 93–99008, 93–99009.

United States Court of Appeals, Ninth Circuit.

Aug. 20, 1993.

Charles C. Marson, Remcho, Johansen & Purcell, San Francisco, CA, for petitioner-appellant.

Michael K. Brady, Brady & Kent, Sacramento, CA, for petitioner.

Richard B. Mazer, San Francisco, CA, for applicants in intervention/appellants.

Catherine A. Rivlin, Deputy Atty. Gen., State of Cal., for respondent-appellee.

### ORDER

Having considered the merits of the above captioned appeals and having filed an opinion herein and the court being aware that a stay of execution was entered by the district court which shall remain in effect pending further action by this court and it appearing that further time may be required for consideration by this court whether to grant en banc reconsideration, now therefore, it is,

ORDERED that the clerk of this court, unless otherwise directed by an en banc court, shall issue the mandate at 4:00 PDT on August 23, 1993 and on that date and at that time, the stay of execution entered by the district court shall be of no further force and effect.

Before: HUG, POOLE, and BEEZER, Circuit Judges.

HUG, Circuit Judge:

The petitioner, David Mason, was convicted in California state court of five murders and received the sentence of death on each count. The judgment was affirmed on appeal by the California Supreme Court. Three petitions for writs of habeas corpus were denied by that court.[1] Mason, through his attorney Charles Marson, filed a petition for a writ of habeas corpus in the federal district court. Prior to any hearing on that petition, Mason informed his counsel Marson that he did not want to proceed with the federal habeas petition, and that he desired to discharge Marson as his attorney because Marson did not agree with this course of action. Attorney Marson resisted the dismissal of the action, fearing that Mason was not competent to make such a decision.

The district court appointed a psychiatrist, Dr. Kessler, to examine Mason and to aid the court in its competency determination. The district court also granted Mason's request to have an attorney of his choice, Michael Brady, represent him at the competency hearing. At the competency hearing attorney Marson, attorney Brady, the deputy attorney general Rivlin for the state, and Mason himself took part. Reports and testimony from Dr. Kessler and from Dr. Wayland, Dr. Fromming and Dr. Foster were considered along with substantial documentary evidence. After due consideration, the district court entered an order finding Mason competent to substitute counsel and to dismiss the petition. Thereafter, on application of Mason and his substitute counsel, the court entered its order dismissing the petition. We affirm the district court.

Although there are numerous procedural issues in this case, the controlling determina-

---

1. During the course of these proceedings the third petition for a writ of habeas corpus was filed with the California Supreme Court and denied on this date. Counsel Brady emphasized at oral argument that Mason desired to have the subject of that petition considered only by the California Supreme Court and that no further filings would be made in federal court. Thus this recent petition to the California Supreme Court has no bearing on the proceedings before us.

tion is whether the decision of the district court finding Mason mentally competent to substitute counsel and dismiss the petition was reversible error.

## I

### Detailed Facts

David Mason, a California prisoner, was convicted of five counts of first degree murder with special circumstances and sentenced to death in the Superior Court of Alameda County, California. The Supreme Court of the State of California affirmed Mason's conviction and sentence, *People v. Mason,* 52 Cal.3d 909, 277 Cal.Rptr. 166, 802 P.2d 950, *cert. denied,* —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991). That Court has subsequently rejected three habeas corpus petitions involving Mason.

On April 23, 1992, attorney Charles C. Marson, Mason's appellate counsel in the state proceedings, filed a federal habeas corpus petition on behalf of Mason in the United States District Court for the Northern District of California. Mason verified the petition one day later. In response to the petition, the district court stayed Mason's execution date of April 28, 1992 and appointed Marson to represent Mason in the federal proceedings.

On January 4, 1993, Marson filed an amended habeas corpus petition which Mason did not verify. In a letter to the district court dated January 7, 1993, Mason indicated that he was satisfied with the decision of the California Supreme Court, that he had decided not to seek further relief in federal court, and that he had neither the need nor the desire to be represented by Marson. On January 21, 1993 the State of California filed a motion to dismiss Mason's petition. On February 4, 1993, Marson filed opposition papers and declarations from several mental health professionals stating that Mason was suffering from mental illnesses that were affecting his decision to withdraw his petition. The district court appointed an independent psychiatric expert to examine Mason and scheduled a hearing to determine Mason's competency.

Prior to the competency hearing, the district court received several letters from Mason reiterating his desire to both abandon federal review of his death sentence and to dismiss Marson as counsel. Mason complained that Marson had ignored his objections and continued the federal proceedings because Marson was personally opposed to the death penalty. For this reason Mason contended that Marson would be unable to adequately represent Mason's interests. Mason indicated that he had retained his own attorney, Michael Brady, and requested the court to appoint Brady as his counsel. On March 5, 1993 the court recognized the appearance of Brady as counsel for Mason, but ordered Marson to remain Mason's court-appointed attorney until his mental competence was determined.

On May 13 and 14, 1993, the district court conducted a hearing to determine Mason's competency, in which the counsel—Marson, Brady and the Deputy Attorney General— were given the opportunity to present and cross-examine witnesses. At that hearing, Marson called as witnesses Dr. Kathleen Wayland, a psychologist who had interviewed Mason in November of 1992 and Dr. David V. Foster, a psychiatrist who had not examined Mason, but who had reviewed the evidence submitted in connection with the hearing and other documents. Both experts testified that Mason was suffering from post-traumatic stress disorder ("PTSD") and that this condition affected his decision to abandon his petition for habeas corpus. Marson supplemented this testimony with declarations already in the record from Dr. Wayland, Dr. Foster, Dr. Karen B. Fromming, Dr. Jules Burstein, and three of Mason's sisters, Darlene Mason Hill, Linda Sue Mason Miller, and Joy Louise Mason. Marson introduced additional declarations, copies of paintings made by Mason and other documents.

The State called Dr. David Kessler, the psychiatrist appointed by the court to independently evaluate Mason. Prior to the hearing, Dr. Kessler had conducted an examination of Mason and submitted a report to the court concluding that Mason was mentally competent. During the hearing, Dr. Kes-

sler maintained this view, testifying that Mason did not suffer from PTSD. Dr. Kessler stated that Mason has suffered throughout his life from an antisocial personality disorder, but that this had not affected his decision to forego federal habeas review. Finally, the State called Mason himself. In examination by both the court and counsel, Mason testified concerning his decision and its consequences.

On June 7, 1993, the district court entered an order finding Mason competent to substitute counsel and to dismiss the action. The court stated that it would dismiss his petition upon receipt of a request to do so signed by Mason and his counsel, if any. On June 10, Mason filed a request that Michael Brady be substituted for Charles Marson. On the same date, Mason filed a request to dismiss his petition and vacate the stay of execution. On June 14, the district court relieved Marson as counsel of record, substituted Brady, and granted a voluntary dismissal of the petition pursuant to Fed.R.Civ.P. 41(a)(1).

The Superior Court thereafter issued a death warrant setting Mason's execution date for August 24, 1993 at 12:01 a.m.

On June 28, 1993, Marson filed a motion to set aside the judgment pursuant to Fed.R.Civ.P. 59(e). On July 22, 1993, three of Mason's siblings, and three persons, Randy Alana, Patrick Tafoya and Lee Terry Farmer, filed a motion to intervene in the Rule 59(e) motion as next friends, through their attorney Richard Mazer. Shortly thereafter, Mason's siblings withdrew from the next friend petition. A hearing was held on July 30, 1993, at which time the district court denied the motion to set aside the judgment and the motion to intervene. On August 3, 1993, the district court granted Marson's request for a certificate of probable cause and a stay of execution pending appeal, but denied a similar request made by the next friends. Marson now appeals from the judgment entered on June 14, 1993 on behalf of Mason. The next friends appeal both the June 14 judgment and the denial of their motion to intervene. The State has filed an emergency motion to vacate the stay of execution.

## II

### Procedural Posture

This case presents an unusual circumstance in which the petitioner and his appointed attorney are actively contesting the petitioner's competence. To add to the unusual character of this case, petitioner sought and was granted permission to have counsel of his choice represent him in upholding his competence to guide the course of his litigation. Marson was the court appointed attorney who had represented Mason in his appeals to the California Supreme Court and had filed the petition for habeas corpus in the federal district court. As his attorney he believed he had an ethical obligation, acting in the best interest of his client, to contest Mason's competency to dismiss his action. We have recognized the appropriateness of such action by attorneys in similar circumstances. *See Lenhard v. Wolff*, 603 F.2d 91, 92–93 (9th Cir.1979) (per curiam).

On the other hand Mason as the petitioner is entitled to guide the course of his litigation, including dismissing his action either on his own or through an attorney of his choice, provided he is mentally competent to do so. Attorney Marson, as a participant for Mason in the proceedings, is also entitled to appeal the court's decision of mental competence, which would otherwise remain unreviewed in a death penalty case. This was recognized by Judge Whyte in granting the certificate of probable cause and the stay of execution.

The appeal of the next friends is far more tenuous, in that a certificate of probable cause was not granted. Furthermore, the next friends did not participate in the competency hearings, but only at the stage of the motion to amend or alter the judgment. In order to have standing, the next friends would have to establish the incompetence of Mason, in any event. *See Whitmore v. Arkansas*, 495 U.S. 149, 164, 110 S.Ct. 1717, 1727, 109 L.Ed.2d 135 (1990); *Brewer v. Lewis*, 989 F.2d 1021, 1026 (9th Cir.1993). Because we hold that the district court did not err in finding Mason competent to dismiss his federal court action, we need not

delve into the procedural issues relative to the appeal of the next friends.

### III

### Competency Determination

Initially we must commend District Judge Whyte for the manner in which the proceedings in the district court were conducted. Adequate time for preparation was afforded. A psychiatrist was appointed by the court. The court noted: "In order to ensure impartiality the court elected to appoint a psychiatrist other than one recommended by one of the parties." All interested parties were able to present all the relevant evidence. Mason was afforded counsel of his choice to represent his point of view and he, Marson, and the State's Attorney were each given full opportunity to examine the witnesses. The district judge thoroughly and carefully questioned Mason himself.

This panel of the court has had a full opportunity to consider the excellent briefs of the parties, to review the record before the district court and to hear extended oral argument. The panel appreciates the manner in which this serious matter has been presented to the court.

The district court correctly set forth the standard by which his determination on mental competence must be made.

This court must ascertain whether Mr. Mason has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises. *Rees v. Peyton,* 384 U.S. 312, 314 [86 S.Ct. 1505, 1506, 16 L.Ed.2d 583] (1966).

■ The district court made the following findings of fact:

1. Mr. Mason is not suffering from a mental disease, defect, or disorder other than possibly antisocial personality disorder.

2. Mr. Mason's capacity to decide to discharge his attorney and abandon this action is not substantially affected by any antisocial personality disorder.

3. Mr. Mason's decision to discharge his attorney and dismiss this action is made freely and voluntarily with a full understanding of the ramifications and the consequences of his decision.

The United States Supreme Court has emphasized the importance of compliance with the dictates of Federal Rule of Civil Procedure 52(a). That Rule provides: "Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The Court has stated:

Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases.... The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*." *Zenith Radio Corp v. Hazeltine Research, Inc.,* 395 U.S. 100, 123 [89 S.Ct. 1562, 1576, 23 L.Ed.2d 129] (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous....

This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts....

. . . .

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only

the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. *Anderson v. Bessemer City,* 470 U.S. 564, 573–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

Although there was conflicting evidence, the testimony of the court appointed psychiatrist, Dr. Kessler, clearly supports the decision of the district court. Furthermore the district court had an opportunity to evaluate the testimony of Dr. Wayland and Dr. Foster in light of the cross-examination and other testimony. In addition, the district court conducted extensive questioning of petitioner Mason himself. This questioning of Mason of course would not be determinative absent adequate expertise, advice and testimony, but is clearly supportive of the decision of the district court.

■ On appeal Marson argues that the district court applied an incorrect burden of proof in determining the mental competence of Mason. When a habeas petition has been filed in the federal district court, appropriately invoking the court's jurisdiction and the mental competency of the petitioner is reasonably questioned, it is the obligation of the court to determine the petitioner's mental competence. Initially sufficient evidence must be presented to cause the court to conduct an inquiry. After that point it is no one's burden to sustain, rather it is for the court to determine by a preponderance of the evidence whether the petitioner is mentally competent to withdraw his petition. This is essentially the procedure followed in *Rees v. Peyton.*

The Court in *Rees* stated:

Whether or not Rees shall be allowed in these circumstances to withdraw his certiorari petition is a question which it is ultimately the responsibility of this Court to determine, in the resolution of which Rees' mental competence is of prime importance. We have therefore determined that, in aid of the proper exercise of this Court's certiorari jurisdiction, the Federal District Court in which this proceeding commenced should upon due notice to the State and all other interested parties make a judicial determination as to Rees' mental competence and render a report on the matter to us....

... The District Court will hold such hearings as it deems suitable, allowing the State and all other interested parties to participate should they so desire, and will report its findings and conclusions to this Court with all convenient speed.

*Rees v. Peyton,* 384 U.S. at 313–14, 86 S.Ct. at 1506–07. The district court followed the same procedure in this case, with all interested parties being allowed to participate so as to assist the court in its determination.

■ The abandonment of a filed petition is to be distinguished from the situation in which parties are seeking initially to invoke the jurisdiction of the federal court as next friends. In that case, no petition has been filed by the convicted person that properly affords jurisdiction in the district court. Instead, parties who are foreign to the criminal conviction are seeking to establish their right to invoke the jurisdiction of the district court as next friends of the convicted person. In order to establish initial standing to bring such an action, the burden of proof is on the next friends to show the mental incompetence of the convicted person himself. *Whitmore v. Arkansas,* 495 U.S. at 164, 110 S.Ct. at 1727; *see also Brewer v. Lewis,* 989 F.2d at 1026. Although there are some similarities in this case to that of next friend cases in that attorney Marson seeks to establish the mental incompetence of his client despite his client's wishes, this is not a jurisdictional standing question. Rather Marson is representing Mason's rights in his habeas proceeding in the event that he is actually mentally incompetent to dismiss his habeas petition.

■ We recognize that the Supreme Court in *Medina v. California,* —— U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), held that it did not violate due process in a criminal trial to place upon the party claiming incompetence the burden of proving by a preponderance of the evidence that the defendant is incompetent. This holding under the due process clause of the United States Constitution does not dictate, however, the correct procedure for determining mental competence in a federal habeas corpus proceeding. Such a proceeding is much more akin to that of the procedure followed in *Rees v. Peyton*

in a request to dismiss a petition for certiorari, whereby the district court is to make an independent determination of mental competency.

## IV

## Conclusion

Under the standard of Federal Rule of Civil Procedure 52(a) as expounded by the Supreme Court in *Anderson* we uphold the factual determination of the district court that Mason was mentally competent to substitute his attorney and to dismiss his federal habeas action.

We therefore affirm the district court's order dismissing the action and we address the stay of execution in a separate order.

