**Keith Eugene WELLS, By and Through Rolf M. KEHNE, Petitioner–Appellant,**

v.

**A.J. ARAVE, Warden, Respondent–Appellee.**

No. 94–99000.

United States Court of Appeals, Ninth Circuit.

Jan. 5, 1994.

Redesignated as Order for Publication and Amended to Include Judge Reinhardt's Dissent Jan. 24, 1994.

Before: WALLACE, Chief Circuit Judge, HUG, POOLE, D.W. NELSON, NORRIS, REINHARDT, BEEZER, THOMPSON, TROTT, T.G. NELSON, and KLEINFELD, Circuit Judges.

Rolf M. Kehne is attempting to appeal from the order of the district court dismissing a writ of habeas corpus. The district court denied a certificate of probable cause and a stay of execution. A panel of this court also denied a certificate of probable cause and a stay of execution 18 F.3d 656.

Pursuant to Circuit Rule 22–4(e)(2), an active judge of this court requested en banc review. A majority of the en banc court denies the application for a certificate of probable cause and denies the petition for a stay of execution.

Judges Poole, Norris, and Reinhardt vote to grant a certificate of probable cause and issue a stay of execution.

REINHARDT, Circuit Judge, with whom Circuit Judges POOLE and NORRIS, join, dissenting:

Without any explanation, a majority of the en banc court has summarily denied next-friend petitioner Rolf M. Kehne's request for a stay of Keith Wells' execution. In our rush to "get on with it," we have once again failed to ensure that a death-row inmate is mentally competent before allowing him to waive his rights and submit to execution.[1] As a result, once again we will never know whether the state has acted in a constitutional manner or whether we have unintentionally assisted a mentally disturbed individual in his desire to commit suicide.

I find it troubling that *no court*—state or federal—has allowed the petitioner the opportunity to produce evidence demonstrating Wells' incompetency or to test the state's "contrary" evidence by cross-examination. I also find it troubling that *no federal court* has ever conducted a "hearing" or heard oral argument on any aspect of this case. Such obvious failures of the adversary system, with such serious practical and constitutional implications, should cause grave concern among those who believe that we administer our laws, and particularly our death penalty statutes, in a fair and judicious manner.

## I. STATE PROCEEDINGS

On April 7, 1992, the Idaho state district court sentenced Keith Wells to death under Idaho Code § 19–2515. Upon appeal, Wells raised a number of serious issues, including ineffective assistance of counsel and the lawfulness of his sentence. His trial attorney, Amil N. Myshin, Jr., withdrew because of the obvious conflict of interest, and Rolf M. Kehne was appointed as Wells' appellate counsel.

Despite his continuing claims of actual innocence, Wells dismissed Kehne in February 1993 and requested that his death sentence "be carried out as soon as feisibly [sic] possible." Over Kehne's objections and notwithstanding Myshin's obvious conflict, the state court reappointed Myshin as Wells' counsel.

On May 25, 1993, the state district court held a brief competency "hearing." It consisted of only seven pages of transcript and did not include any live testimony about Wells' mental condition. The "evidence" consisted of a *single* written report from a psychologist who had previously recommended that Wells be hospitalized for "significant emotional problems" and a "severe thought disorder."[2] The report was at best equivocal. There was, of course, no opportunity for cross-examination of its author.[3] Without

---

1. See, e.g., Brewer v. Lewis, 989 F.2d 1021 (9th Cir.1993) (Norris, J., dissenting) ("A human life is at stake. I fail to understand the rush to judgment.").

2. There was also a second written report—by a nurse—on Wells' physical condition.

3. At no point in the report did the psychologist state: "In my opinion, Wells is competent to make the decisions involved." Rather, he carefully qualified his opinions and offered only guarded expressions. The report first concluded that "over time, and in a structural [sic] environment, Keith is competent to make decisions re-

garding his life." Report at 5. The question, of course, is not what Wells' competency would be "over time" or in a "structural environment," but whether he was competent to decide to waive his rights to appeal and to submit to execution at the particular time. Ultimately, the report stated that Wells "appears to be competent at this time to make these judgments." *Id.* Why "appears to be"? These conclusions may or may not be adequate standing alone, but their phrasing clearly demonstrates the need for cross-examination and the adversary process, including the introduction of additional evidence based on an examination by one or more psychiatrists.

more, the court concluded that Wells was competent. On June 2, 1993, the court issued an order in which it dismissed his Petition for Post–Conviction Relief. On August 27, 1993, the Idaho Supreme Court affirmed the state district court's dismissal of Wells' appeals. Thus, no court ever reviewed the question of the constitutionality of Wells' conviction.

On December 3, 1993, the Idaho Supreme Court affirmed Wells' death sentence under the automatic death sentence review provisions of Idaho Code § 19–2827.[4] *Both* the state and Wells filed briefs arguing for his execution. The court refused to consider any amicus briefs, and as a result the court was not presented with any arguments that Wells' sentence was unlawful under the Idaho statute or under the United States Constitution. On December 7, 1993, the state supreme court issued its remittitur. On December 22, 1993, it rejected without comment the request by Idaho Attorneys for Criminal Justice, a local group of attorneys, to have the remittitur recalled. The lawyers set forth a number of reasons why Wells' execution would be unconstitutional. The execution was scheduled for January 6, 1994, at 12:01 p.m., M.S.T.

## II. FEDERAL PROCEEDINGS

On the afternoon of January 3, 1994 (12:23 p.m., P.S.T.), Kehne, the initially appointed appellate counsel, filed a petition for a writ of habeas corpus in federal district court for the District of Idaho. Kehne also filed several initial motions, including a request that the entire state record be brought before the district court. In support of the petition and the motions, Kehne stated in an affidavit that Wells had a documented history of serious mental illness, including psychosis. Kehne also stated that Wells believed that he was possessed by demons and that his condition

could be cured only if they were exorcised through his death.[5]

On the morning of January 5, 1994 (7:18 a.m., P.S.T.), less than 16 hours before the scheduled execution, the federal district court dismissed the petition and the motions for lack of standing. The court based its decision on a "review" of only six documents—the petition, the motions, two affidavits by Kehne and his co-counsel, the state's objection, and Kehne's response to the objection. The court did not hold a hearing on Wells' competency. It did not order any additional examinations. It did not speak with Wells. It reviewed at best only a small portion of the state record.

Later that morning (10:45 a.m.), Kehne filed his notice of appeal with the Ninth Circuit. That afternoon (3:38 p.m.), a three-judge panel of this court issued an order in which it denied Kehne's appeal. The panel did not hold any oral argument on the question of Wells' competency. Instead, in a short four-page order, it simply concluded that "Kehne has presented no 'meaningful evidence' to cast doubt on the state court's determination of competence and therefore no further evidentiary hearing was required." *See* Order at 3. It relied primarily upon two cases—*Brewer v. Lewis,* 989 F.2d 1021 (9th Cir.1993), and *Demosthenes v. Baal,* 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). *See* Order at 3–4.

At 4:56 p.m., all Ninth Circuit judges were informed of a judge's call for en banc review of the panel's decision. Those of us on the en banc court had only *two hours*—until 7:00 p.m.—to review the panel's decision and to write and exchange memoranda on the question whether a stay should be granted. Voting began at 7:30 p.m. By 8:41 p.m., a majority of the en banc court had voted to deny Kehne's petition for a stay of execution.

---

**4.** This review is limited to questions affecting the sentence and does not encompass issues relating to the conviction.

**5.** In his affidavit, Kehne explained why he was best suited to serve as Wells' next friend. He stated that he had spent over a hundred hours working on this case and that he had made a

"very intense effort to reach out to Keith and to understand him." In so doing, he had "develop[ed] a deep, personal and professional commitment to Keith and to his legal rights." Kehne's observations of Wells' auditory hallucinations and physical transformations were fully corroborated by Wells' wife Cindy. *See* Affidavit at 3–5.

At 10:25 p.m., we issued our order. Within an hour and a half, Wells was dead.[6]

## III. DISCUSSION

The majority of this en banc court refused to stay Wells' execution despite the fact that *no court*—state or federal—has held any proceedings at which Kehne could introduce evidence regarding Wells' competency or directly challenge the evidence introduced by the state. The state district court based its decision primarily on *one* equivocal written report. Kehne was not allowed to present contrary evidence, and he was not allowed to cross-examine the psychologist who prepared the report. Similarly, the federal district court based its decision on *six documents*. Again, Kehne was not allowed to present evidence or to examine or cross-examine any witnesses.

As a federal appellate judge, I am particularly disturbed by the fact that *no federal court* has even allowed Kehne the opportunity to present oral argument. Oral argument permits the court to ask questions, challenge assertions, test theories, and determine the answers to critical issues. It also allows counsel to point out mistakes in the court's initial response to those issues, factual and legal, and to show why precedents that may appear to be binding are in fact distinguishable. A lawyer's view on these critical questions is always helpful to the court. The lawyer has often, as here, lived with the case for a considerable period of time, while the court may, as here, be seeing the issues for the first time and may, rightly or wrongly, consider itself subject to extraordinary time constraints. In the case before us, the federal district court in less than *two days* adopted the state finding without a hearing. The Ninth Circuit panel in less than *five hours* affirmed the federal district court without oral argument. The Ninth Circuit en banc court less than *four hours* later denied a stay without any oral argument and without even assembling or otherwise discussing the case in a collegial manner. Surely this is no way for judges to perform the

single most important duty assigned to them by the Constitution and federal law.

Under Supreme Court precedent, a certificate of probable cause must issue—and thus a stay—if a petitioner has raised a question "debatable among jurists of reason." *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3394-95 n. 4, 77 L.Ed.2d 1090 (1983). Was the state finding based upon a "full and fair" hearing within the meaning of 28 U.S.C. § 2254(d)? Did the federal district court's "review" of six documents constitute an adequate "proceeding" under that section? Did any or all of the state and federal proceedings satisfy Wells' constitutional rights to due process? *Was Wells "competent"?* Did Kehne fail to present "meaningful evidence" of Wells' incompetence? Are *Brewer* and *Baal* indistinguishable from this case? In my opinion, all these questions are at the least "debatable among jurists of reason." Were I required to answer them based on the limited information before us and in the limited time afforded us, I would be compelled to respond to at least a fair number in a manner favorable to Wells.

Of course, there are the important underlying questions that no court will ever reach because both state and federal courts refused to grant Kehne standing or even a stay. Was Wells convicted properly under the Constitution of the United States? Was the death sentence lawfully imposed? I believe that Kehne has raised serious issues regarding these questions that deserve to be addressed, including the claims of ineffective assistance of counsel and of improper sentencing in light of the jury's refusal to find that Wells was the actual killer.

As appellate judges, we have the duty to resolve difficult questions of law in a calm and orderly fashion. This is especially true in capital cases. We failed to do so in *Harris. See* Stephen Reinhardt, *The Supreme Court, The Death Penalty, and The Harris Case,* 102 Yale L.J. 205 (1992). We failed to do so in *Brewer. See Brewer,* 997 F.2d 550 (9th Cir.1993) (Reinhardt, J., dissenting from the denial of rehearing en banc); *Brewer,* 989

6. The Supreme Court denied an application for stay of execution at 11:37 p.m., with Justices Blackmun and Stevens dissenting. That court's

jurisdiction differs substantially from ours, of course, primarily in that review by certiorari is discretionary. Our review is not.

F.2d at 1032 (Norris, J., dissenting). We failed to do so in *Mason. See Mason v. Vasquez,* 5 F.3d 1220, 1226 (9th Cir.1993) (Pregerson, J., dissenting from the order of the en banc court); *id.* at 1229 (Noonan, J., dissenting from the order of the en banc court). Tonight, we fail once again, only this time we break all our prior speed records while doing so.

The speed with which we act has prevented us from developing a coherent body of habeas corpus law. We do not pause to give rigorous intellectual examination to the positions we take and are deprived of the opportunity for the thoughtful and reasoned exchanges of views that are so essential to proper judicial decisionmaking. It is the subjecting of ideas to careful analysis by others that frequently forges opinions that result in positive and creative advances in the law. Instead, in the habeas corpus area, we end up with serious gaps in our jurisprudence and, often, with decisions that are logically flawed. None of our cases addresses the critical question of what constitutes a "full and fair" state-court hearing within the meaning of 28 U.S.C. § 2254. *See, e.g., Richmond v. Ricketts,* 774 F.2d 957, 961–62 (9th Cir.1985). Other critical questions have been similarly ignored. For example, how can a next-friend petitioner ever present "meaningful evidence" of a defendant's incompetency to a district court if he lacks standing to request medical examinations or to cross-examine witnesses in the first place? In short, I believe that because of our emphasis on speed over substance, our entire body of next-friend standing law is badly underreasoned and underdeveloped.

Worst of all, we make bad law when we are forced to decide life or death questions and to issue opinions regarding them, all within hours. For example, our opinion in *Gomez v. United States District Court,* 1992 WL 155238 (9th Cir. Apr. 20, 1992), was so flawed that it was withdrawn from publica-

tion.[7] The legal analysis in several of our recent death penalty opinions, has been—to put it charitably—faulty, and as a result the ultimate decisions are, at best, highly questionable. Moreover, the errors are cumulative as one flawed case builds upon another. All of this may be understandable, given the pace at which we have been required to act. However, in my opinion, the price is far too high. This is not how law should be made in any case—and certainly not when human life is at stake. Perhaps someday we will slow down and give habeas petitioners the fair and adequate federal review to which they are entitled. Only then will we be acting like a court of law. Accordingly, I dissent.

---

7. Officially, the opinion was withdrawn as moot. *See Gomez v. United States District Court,* 966 F.2d 463 (9th Cir.1992). However, our opinions in other cases in which the petitioner was executed under similar circumstances were subsequently published. *See, e.g., Brewer,* 989 F.2d at 1021; *Mason,* 5 F.3d at 1220.