**Robert Lee MASSIE, By and Through Michael A. KROLL, Next Friend, Petitioner–Appellant,**

v.

**Jeanne S. WOODFORD, Warden, Respondent–Appellee.**

No. 01–99002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted by telephone March 25, 2001.

Filed March 25, 2001.

Gail R. Weinheimer, San Anselmo, California and Robert F. Kane, San Francisco, California for petitioner and next friend Michael A. Kroll.

Kirk C. Jenkins, Sedgwick, Detert, Moran & Arnold, San Francisco, California for petitioner Robert Lee Massie.

Bruce Ortega and Dane R. Gillette, San Francisco, California for respondent Jeanne Woodford.

Before SILVERMAN, GOULD, and TALLMAN, Circuit Judges.

## OPINION

PER CURIAM.

Michael A. Kroll appeals after the district court denied his motions to proceed as "next friend" for, and stay the execution of, Robert Lee Massie, a California prisoner whose execution is scheduled for March 27, 2001 at 12:01 a.m. After carefully reviewing all the papers before us and hearing oral argument by phone, we affirm the district court's judgment and deny a stay of execution.

Robert Lee Massie was convicted and sentenced to death for the January 3, 1979 murder of Boris Naumoff. *See People v. Massie,* 19 Cal.4th 550, 79 Cal.Rptr.2d 816, 967 P.2d 29 (1998). Whether Massie's conviction and sentence meet federal constitutional standards is not now before us. We focus solely on whether the district court erred when it concluded that Kroll lacked standing to appear as Massie's next friend. *See Whitmore v. Arkansas,* 495 U.S. 149, 164, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (standing is jurisdictional and the burden is on the next friend to establish the propriety of his or her status).

■■■ In order to establish next friend standing, the putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner. *See Whitmore,* 495 U.S. at 163–65, 110 S.Ct. 1717. The district court concluded that Kroll lacked standing on the former ground. The district court's finding that Massie is competent is a factual determination, *see Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990), that we accept unless clearly erroneous.

## A. Background

Massie initiated federal habeas proceedings in June of 1999. On May 15, 2000, represented by the same counsel who represented him on direct appeal and thereafter, Massie filed an amended petition asserting only four claims. In order to determine whether Massie was competent to waive all other potential claims, the district court conducted an evidentiary hearing where Massie appeared in person. Massie explained that it was his decision, not counsel's, that only claims that would lead to Massie's outright release would be raised because, in Massie's opinion, another retrial would lead only to the same result, another death sentence, or at best, a sentence of life without the possibility of parole. *See* Transcript of August 18, 1999

Hearing at 9–12. In response to direct questions by the district court, Massie testified that in the past ten years he has not seen a prison psychologist or psychiatrist, nor has he taken any medication for psychological or psychiatric matters. *See id.* at 6–7. Massie also stated expressly that he understood he was waiving all ineffective assistance of counsel claims, including the claim that present counsel was ineffective for previously failing to raise possibly meritorious issues. *See id.* at 15–16. The district court offered Massie the services of independent counsel with whom to consult, but Massie refused. *See id.* at 17. After extensive testimony by Massie, the district court found Massie competent under the standard of *Rees v. Peyton,* 384 U.S. 312, 313–14, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966) (per curiam) (whether petitioner has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises). *See* District Court's Order of August 25, 1999 at 3.

In October 2000, Massie moved to dismiss his federal petition. The district court conducted an evidentiary hearing on December 21, 2000. Massie, who again appeared in person, testified that he changed his mind because: (1) he was convinced in light of a recent court opinion that one of the claims he asserted would not lead to his release; and (2) it was not the conditions of confinement but the quality of life in prison that led him to change his mind and dismiss his petition, adding that "[s]ome people prefer to just go ahead and move on." *See* Transcript of December 21, 2000 Hearing at 17, 20. Massie confirmed that he had not received any medical or psychiatric care or taken any medications since the last hearing. *See id.* at 11. Massie stated he understood that he was under a sentence of death and that the dismissal of his petition would result in his death. *See id.* at 18–20. The district

court also heard the sworn testimony of Massie's counsel, Fred Baker, who has represented Massie since 1993. Baker testified that Massie is "competent, highly intelligent, well-informed, and insightful with respect to the legal and the other issues involved in this case." *See id.* at 6. Asked by the court about the number of his communications with Massie concerning the subject of dismissing his petition, Baker testified that "there have been dozens of written communications," "at least a dozen telephone conversations," and "two in–person visits." *See id.* at 5. The district court found that Massie was competent to dismiss his petition and that his decision to do so was knowing, intelligent, and voluntary. *See id.* at 27. The district court gave Massie until January 8, 2001 to reconsider. *See id.* at 28. Having heard nothing from Massie, the district court later dismissed Massie's petition. *See* District Court's Order of January 8, 2001. The state courts thereafter set Massie's execution for March 27, 2001.

Three-state medical doctors interviewed Massie for fifty-five minutes on February 22, 2001 and for forty-five minutes on March 7, 2001. Although these doctors did not specifically address the competency standard under *Rees v. Peyton,* each concluded that Massie understood that he was about to be executed and why.[1] California Department of Corrections Staff Psychiatrist S.C. Gibbs, M.D., submitted a report of his evaluation of Massie that took place on March 7, 2001. He reported that:

> In interview inmate Massie was calm, and entirely appropriate in his behavior. He conversed in a rational manner and indicated a full understanding of his circumstances. He was fully oriented to time, person, and place. He discussed at length his viewpoint and the rationale behind it. At no point did he manifest evidence of any mental disorder or defect.

*See* March 7, 2001 7–Day Pre–Execution Report by S.C. Gibbs, M.D.

On or about March 20, 2001, Michael A. Kroll, a journalist who over the past fifteen years has corresponded, and at times met, with Massie, filed in the California Supreme Court essentially the same next friend petition that underlies this appeal. On March 22, 2001, Massie's counsel submitted a response to the next friend petition, which included a declaration signed by Massie on March 22, 2001. Massie opposed the next friend petition and asked the California Supreme Court not to file it. On March 23, 2001, the California Supreme Court denied the next friend petition because, inter alia, it failed to show that Massie was incompetent to elect not to seek habeas relief. *See* California Supreme Court Order of March 23, 2001.

In district court that same day, March 23, 2001, Kroll filed, on Massie's behalf, motions to file an amended petition and for stay of execution. The district court conducted a hearing late that afternoon and, for reasons stated orally from the bench, denied both motions early that evening. Kroll has appealed.

At oral argument in this Court, Massie, through counsel, opposed the next friend petition. We now review to determine whether Kroll can establish standing.

### B. *Kroll's Contentions*

Kroll insists that Massie is now incompetent to waive his habeas proceedings. Kroll asserts, in the petition which he seeks to file on Massie's behalf, that Massie's underlying conviction for murder is invalid because, inter alia, the trial court failed sua sponte to order a competency

---

1. *See Ford v. Wainwright,* 477 U.S. 399, 422, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (Powell, J ., concurring) (the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it); *cf. Rees,* 384 U.S. at 313–14, 86 S.Ct. 1505 (whether petitioner has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises).

hearing for Massie despite numerous indications that Massie may have been incompetent to stand retrial in 1989. Kroll maintains that Massie was also incompetent at his 1965 murder trial and therefore evidence of that conviction should not have been admitted for special circumstance and aggravating evidence purposes at his 1989 retrial. Kroll also contends that appellate counsel, who represented Massie in his direct appeal of his 1989 conviction and thereafter, rendered ineffective assistance of counsel because counsel acquiesced in Massie's suicidal wishes and only raised the claims that Massie wanted raised even though those claims purportedly are legally frivolous. Kroll further alleges that appellate counsel were civil lawyers, inexperienced in capital habeas litigation; that appellate counsel's opening brief was so deficient that the California Supreme Court instructed counsel to raise every arguable issue; and that despite this order, counsel filed a supplemental brief challenging the Supreme Court's order to force counsel to raise claims not desired by the client.

Kroll includes numerous documents that allegedly show that: Massie was abused and neglected as a child; Massie was twice gang-raped in prison as a young man; Massie has a lengthy history of serious mental problems dating from before the eighth grade, continuing through his 1965 murder trial, through his 1979 trial for Naumhoff's murder, and through his 1989 retrial; Massie has been diagnosed as schizoid, manic depressive, perhaps schizophrenic; Massie was prescribed anti-psychotic medications during the 1979 trial and 1989 retrial; Massie contemplated suicide on more than one occasion during the 1989 trial; jail staff moved Massie to a special observation unit during the 1989 trial; counsel informed the trial judge in the 1989 retrial that a competency hearing would be appropriate and unless Massie were returned to regular jail housing, the attorney-client relationship would be disrupted; and the trial judge in the 1989 retrial ordered Massie returned to regular jail housing even though jail staff considered Massie a severe suicide risk.

## C. *Analysis*

■ We have carefully considered Kroll's allegations and contentions regarding Massie's history of mental problems and Massie's alleged incompetency during his 1989 trial. However, Massie's prior history of mental problems and alleged incompetency during his 1989 trial concern events which are now twelve and more years old. Kroll must show that Massie is *currently* incompetent to waive further federal habeas proceedings. *Cf. Baal*, 495 U.S. at 737, 110 S.Ct. 2223 (prior suicide attempts are insufficient to demonstrate present incompetency); *cf. also Wells v. Arave*, 18 F.3d 658, 660 & n. 5 (9th Cir. 1994) (Reinhardt, J., dissenting from denial of en banc review after three-judge panel denied a stay of execution) (arguing that stay was warranted because petitioner had a documented history of serious mental illness including psychosis, delusional thinking, and auditory hallucinations).

■ Mental incompetency in the "next friend" context must meet the *Rees v. Peyton*, 384 U.S. at 314, 86 S.Ct. 1505, standard. *See Whitmore*, 495 U.S. at 166, 110 S.Ct. 1717 (citing *Rees*). The putative next friend must present "meaningful evidence" that petitioner is suffering from a mental disease, disorder, or defect that substantially affects his capacity to make an intelligent decision. *See id.* (citing *Rees*).

The transcripts of the hearings conducted by the district court in August 1999 and December 2000 clearly reveal Massie to be lucid, responsive, logical, coherent, and fully aware of his situation. The district court's painstakingly thorough questioning of Massie demonstrated beyond any doubt that Massie understands the consequences of his actions and that he has made a rational choice to abandon further litigation. Massie testified that he would rather be executed than pursue legal remedies

that, at best, would assure that he spend the rest of his life in prison.

The district court expressly found both that Massie satisfied the *Rees v. Peyton* competency standard, *see* District Court Order of August 25, 1999 at 3, and that Massie's decision to dismiss his petition was knowing, intelligent, and voluntary, *see* Transcript of December 21, 2000 hearing. *Cf. Comer v. Stewart*, 215 F.3d 910 (9th Cir.2000) (capital petitioner on appeal moved to waive further federal proceedings; this court remanded for competency hearing when prior competency determination was more than a decade old).

Three state doctors who interviewed Massie in late February and early March of this year each concluded that Massie understands he is about to be executed and why. The doctors examined Massie to determine whether he was competent for execution, not whether he was competent to waive federal habeas proceedings. *See Ford v. Wainwright*, 477 U.S. 399, 422, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (Powell, J., concurring); *cf. Rees*, 384 U.S. at 313–14, 86 S.Ct. 1505. However, the doctors also noted that Massie was oriented to time, person, and place; was coherent and exhibiting rational behavior; had fully intact thought processes; and had no indication of mental illness.

In the face of this record, the only evidence of current incompetency that Kroll offers is the following: (1) his own lay declaration in which he states that Massie's history of childhood abuse and neglect and his current depression and "obvious mental illness" render Massie unable "to make a rational decision about whether to continue his appeals;" (2) the declaration of Robert Bryan, counsel at Massie's 1989 retrial, who states both that Massie's current course of action is another manifestation of Massie's suicidal wishes and that on March 21, 2001 Bryan met with Massie and when Bryan asked Massie why Massie's counsel had not raised a speedy trial

claim which, if successful, could have led to Massie's release, Massie's thought processes became increasingly disorganized, his responses illogical, and his reasoning was "out of control;" (3) a declaration by George Woods, M.D., who admits he has never examined Massie yet nonetheless opines that Massie is seriously mentally ill and there is a "high probability" that serious mental illness is impairing Massie's capacity to make rational decisions; (4) a declaration by Pablo Stewart, M.D., who states only that Massie should have been tested for competency at his 1989 trial; (5) a declaration by Fred Rosenthal, Ph.D., M.D., a defense psychiatric expert at the 1989 retrial, who states that Massie's current behavior is consistent with his long-standing self-destructive impulses and that Massie's serious mental illness prevents him from being able to make rational decisions now; and (6) a San Quentin prison record showing that in February 1990 Massie complained of "psychological problems" and requested examination by the Unit Psychiatrist for medication.[2]

We agree with the district court that Kroll has failed to present "meaningful evidence" of current incompetency because: (1) Kroll's declaration cites no bizarre behavior by Massie and Kroll is not a mental health expert; (2) "Bryant (sic) really says that Mr. Massie has not been stating, to Mr. Bryant's (sic) satisfaction, his explanation or understanding of certain legal concepts," *see* Transcript of March 23, 2001 Hearing at 5; (3) Dr. Woods has never examined Massie and he bases his opinion on records that are twelve years old; (4) Dr. Stewart expresses no opinion on Massie's current competence; and (5) Dr. Rosenthal's opinion "is based upon absolutely no evidence since 1989," *see id.* at 6. *Cf. Baal*, 495 U.S. at 736, 110 S.Ct. 2223 (conclusory opinions by doctors who have not personally examined the prisoner are insufficient to establish mental incompetency for next friend purposes). Massie's

---

2. Although Kroll questions whether the State has turned over the entirety of Massie's San Quentin psychiatric file, the State represents

that it has done so. *See* Brief in Opposition to Emergency Motion at 22 n. 6.

1990 request for a psychiatric exam is also insufficient to demonstrate current incompetency because that request is now eleven years old.

Kroll, however, also argues that the district court's two hearings were inadequate because: (1) some of Massie's answers were supposedly nonsensical and demonstrate that Massie does not have the capacity to fully appreciate his position and make rational decisions; (2) counsel for Massie and counsel for the State both misled the court when they each stated they were unaware of any reason to question Massie's competency; and (3) that so misled, the district court's competency determinations are flawed because they were made without the benefit of clinically relevant information.

At the December 21, 2000 hearing, Massie stated he changed his mind because ever were he to prevail on one of his four claims, a recent case had convinced him that "the ultimate result would be to reduce the general party bar conviction to the alternative of second degree burglary which would, in my case, amount to a twenty-five years to life sentence ...." *See* Transcript of December 21, 2000 at 16–17. In context, it is apparent that Massie was saying that he had come to the realization that none of his legal maneuverings would result in an outright acquittal.

We have also considered Kroll's contention that counsel for both the State and for Massie misled the district court when they answered that they were unaware of any reason to question Massie's competency. Given that Massie has had no overt signs of mental illness over the past eleven years, we reject the argument that the attorneys' failure to fully inform the court of Massie's prior history of mental problems fatally flaws the district court's finding that Massie is currently competent.

█ Kroll insists that the district court's competency determinations are inadequate because Massie's current competency cannot be assessed without reference to Massie's history of mental illness which Kroll alleges is documented as four decades in length. Past mental illness, however, is not enough to upset a current determination of competency. *See Brewer v. Lewis,* 989 F.2d 1021, 1026 & n. 6 (9th Cir.1993) (concluding that when four experts who had examined petitioner determined he suffered from a personality disorder yet all agreed he was competent, neither petitioner's long standing mental problems, nor even his current belief that after his execution he and the girlfriend he murdered would live together on another planet, constituted "meaningful evidence" that petitioner was suffering from a mental disease, disorder, or defect that substantially affected his capacity to make an intelligent decision); *cf. Vargas v. Lambert,* 159 F.3d 1161, 1170–71 (9th Cir.) (staying execution because next friend presented meaningful evidence that condemned was suffering from a mental disease, disorder, or defect that substantially affected his capacity to make rational decisions; condemned was currently being medicated with psychotropics, sleeping sixteen hours a day, and one expert diagnosed condemned as psychotic), *stay vacated by Lambert v. Vargas,* 525 U.S. 925, 119 S.Ct. 313, 142 L.Ed.2d 274 (1998). All of the evidence of Massie's alleged incompetency relates to time periods predating 1991. The district court's findings of fact on Massie's current incompetency are not clearly erroneous.

### D. Conclusion

In light of the totality of this record and the law that controls this inquiry, we agree with the district court which found Massie competent based upon substantial evidence developed in two evidentiary hearings and concluded that Kroll had failed to show that Massie currently has a mental disease, disorder, or defect that substantially affects his capacity to make a rational choice concerning continuing or abandoning further proceedings. *See Brewer,* 989 F.2d at 1026 & n. 6; *Vargas,* 159 F.3d at 1170–71, *stay vacated by Lambert,* 525 U.S. 925, 119 S.Ct. 313, 142 L.Ed.2d 274

(1998). Consequently, Kroll lacks standing to file a next friend petition. *See Whitmore*, 495 U.S. at 165–66, 110 S.Ct. 1717.[3]

The judgment of the district court is **AFFIRMED**. Kroll's emergency motion for a stay of execution is **DENIED**.

---

**3.** Because Kroll fails to meet *Whitmore's* first prong for standing we need not address *Whitmore's* second prong, i.e., whether Kroll has some significant relationship with Massie and is truly dedicated to his best interests. *See Whitmore*, 495 U.S. at 163–64, 110 S.Ct. 1717.