**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

YASER ESAM HAMDI,
              *Petitioner-Appellee,*

    and

CHRISTIAN A. PEREGRIM,
                 *Plaintiff,*

FRANK WILLARD DUNHAM, JR., as
next friend of Yaser Esam Hamdi,
                *Petitioner,*

    v.

            No. 02-6827

DONALD RUMSFELD, Secretary of
Defense; W. R. PAULETTE,
Commander,
          *Respondents-Appellants,*

    and

UNITED STATES NAVY,
                *Defendant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-02-348-2, CA-02-382-2)

Argued: June 4, 2002

Decided: June 26, 2002

Before WILKINSON, Chief Judge, and WILKINS and
TRAXLER, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Wilkins and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Gregory George Garre, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellants. Frank Willard Dunham, Jr., Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellee. **ON PLEADINGS:** Paul D. Clement, Deputy Solicitor General, Alice S. Fisher, Deputy Assistant Attorney General, Paul J. McNulty, United States Attorney, Lawrence R. Leonard, Managing Assistant United States Attorney, Norfolk, Virginia, for Appellants. Larry W. Shelton, Supervisory Assistant Federal Public Defender, Geremy C. Kamens, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellee.

---

## OPINION

WILKINSON, Chief Judge:

The Federal Public Defender for the Eastern District of Virginia and Christian Peregrim, a private citizen, filed petitions for a writ of habeas corpus as "next friend" of Yaser Esam Hamdi, a detainee at the Norfolk Naval Station Brig who was captured as an alleged enemy combatant during ongoing military operations in Afghanistan. The district court concluded that the Public Defender properly filed his case as next friend, and ordered the government to allow him unmonitored access to Hamdi. Hamdi's father, however, was ready, willing, and able to file, and in fact has filed, a petition as Hamdi's next friend, and we believe it incumbent upon the Public Defender and Peregrim to show a significant relationship with Hamdi in order to proceed. Because neither the Public Defender nor Peregrim has any significant relationship whatever with Hamdi, each fails to satisfy an important prerequisite for next friend standing. Accordingly, we

reverse the order of the district court and remand these cases with directions that they be dismissed for want of subject matter jurisdiction.[1]

I.

As is now painfully familiar, the al Qaida terrorist network launched an attack on the United States on September 11, 2001, killing approximately 3,000 people. The President responded by ordering United States armed forces to Afghanistan to subdue al Qaida and the governing Taliban regime that was supporting it. During this ongoing military operation, thousands of alleged enemy combatants have been captured by American and allied forces including, as the government contends, Hamdi.

Hamdi was initially transferred to Camp X-Ray at the Naval Base in Guantanamo Bay, Cuba. After it came to light that he was born in Louisiana and may not have renounced his American citizenship, Hamdi was brought to the Norfolk Naval Station Brig. The United States has determined that he should continue to be detained as an enemy combatant in accordance with the laws and customs of war.

On May 10, 2002, the Federal Public Defender for the Eastern District of Virginia, Frank Dunham, filed a habeas petition challenging the government's detention of Hamdi as an enemy combatant and naming as petitioners both Hamdi and himself as Hamdi's next friend. The petition asked, *inter alia*, that the district court: (1) "Grant Petitioner Frank W. Dunham, Jr., Next Friend status, as Next Friend of Yaser Esam Hamdi;" (2) "Order Respondents to permit counsel to meet and confer with [Hamdi] in private and unmonitored communications;" (3) "Order Respondents to cease all interrogations of Mr. Hamdi, direct or indirect, while this litigation is pending;" and (4) "Order that Petitioner Yaser Esam Hamdi be released from Respondents' unlawful custody."

---

[1]Here we decide the Public Defender's and Peregrim's cases only. (No. 02-6827). A separate habeas petition that Hamdi's father filed as next friend after oral argument before this court remains pending. (No. 02-6895). The court regards the filing by Hamdi's father as a valid next friend petition and has ordered that appeal to be briefed and argued by the parties on the merits.

In seeking to be appointed as Hamdi's next friend, the Public Defender conceded that he had had no prior relationship or communication with the detainee. And there was someone with a close preexisting relationship with Hamdi who was, in fact, known to the Public Defender. The Defender had been in contact with Hamdi's father, Esam Fouad Hamdi, but the father had not sought to be appointed as next friend for his son as of the time the Public Defender filed his petition.

Subsequently, one Christian Peregrim, a private citizen from New Jersey, filed another habeas petition on Hamdi's behalf, naming the United States Navy as the respondent. The district court ordered Peregrim to explain "by written affidavit under oath . . . how and why he may be authorized to bring a petition for a writ of habeas corpus on behalf of [Hamdi]." The court further ordered Peregrim to "identify his relationship" to Hamdi and "set forth his financial stature." By letter filed June 7, Peregrim responded that "I have no prior existing relationship with [Hamdi] and have filed the above petition out of concern only for the unlawful nature of his incarceration."

On May 29, the district court held a hearing and consolidated the Public Defender's habeas petition with Peregrim's petition. Quoting *Storti v. Massachusetts*, 183 U.S. 138, 143 (1901), the district court concluded that this case was "properly filed by Frank Dunham as next friend" because "technical issues regarding who is best situated to be next friend will not be allowed to interfere with having the 'mind of the public be put at rest' by a swift resolution of the substance of this petition." The court stated that to the extent "that there may be any problem concerning the fact that the petition is filed, I'm ordering it filed in the interest of justice."

After directing the government to respond to the Public Defender's petition by June 13, the district court ordered that "Hamdi must be allowed to meet with his attorney because of fundamental justice provided under the Constitution of the United States." Further, the court ordered that this meeting was to be "private between Hamdi, the attorney, and the interpreter, without military personnel present, and without any listening or recording devices of any kind being employed in any way." Finally, the court mandated that "72 hours from now," the Public Defender "will interview Mr. Hamdi, if he desires to be inter-

viewed after you explain who you are." The court thus ordered that the meeting be allowed "as of 1:00 p.m. on Saturday, June 1, 2002," twelve days before the government's answer was due.

On Friday, May 31, the United States filed a motion for stay pending appeal of the district court's unmonitored-access order. We granted a stay of the district court's order, and heard oral argument the following Tuesday. At oral argument, the parties joined issue on the question of next friend standing, to which we now turn.[2]

## II.

Article III, Section 2 of the Constitution limits the power of federal courts to actual cases and controversies. Though "several doctrines . . . have grown up to elaborate that requirement," the one "that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important." *Allen v. Wright*, 468 U.S. 737, 750 (1984). In order to have standing to sue in federal court, a plaintiff must show that he has suffered an injury in fact that is fairly traceable to the challenged action of the defendant, and that is likely to be redressed by a favorable decision. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *see also Friends of the Earth, Inc. v. Laidlaw Envtl.*

---

[2]As an initial matter, the Public Defender argues that the district court's order is not immediately appealable. He claims that it does not constitute preliminary injunctive relief because "[a]ccess to Petitioner Hamdi, in itself, neither relates to the legality of his detention nor affects the relative positions of the parties in this case." He also asserts without explanation that the government's notice of appeal "cannot be construed as a request for a Writ of Mandamus."

We are not persuaded. The district court's order is properly understood as having granted preliminary injunctive relief because the government was enjoined from denying the Public Defender access to Hamdi. Indeed, part of the relief the Public Defender's petition seeks is for the district court to "[o]rder Respondents to permit counsel to meet and confer with [Hamdi] in private and unmonitored communications." Alternatively, the government's notice of appeal may in fact be viewed as a petition for a writ of mandamus. *See, e.g.*, *In re Lowe*, 102 F.3d 731, 733 (4th Cir. 1996) (holding that "mandamus is a proper remedy if we find that the district court acted beyond its jurisdiction").

*Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002).

Standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore*, 495 U.S. at 155. Its basic purpose "is to ensure that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both 'the idea of separation of powers' and, more fundamentally, the system of democratic self government that such separation serves." *Friends for Ferrell Parkway*, 282 F.3d at 319 (quoting *Allen*, 468 U.S. at 750).

Nevertheless, a person who does not satisfy Article III's standing requirements may still proceed in federal court if he meets the criteria to serve as next friend of someone who does. In *Whitmore*, the Supreme Court noted that next friend standing "has long been an accepted basis for jurisdiction in certain circumstances," and has most often been invoked "on behalf of detained prisoners who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves." 495 U.S. at 162. The Court clarified that "[a] 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest." *Id.* at 163. The doctrine finds statutory expression in 28 U.S.C. § 2242, which states that a habeas petition may be brought "by the person for whose relief it is intended or by someone acting in his behalf."

Significantly, the *Whitmore* Court stressed that the availability of next friend standing as an avenue into federal court is strictly limited:

> Most important for present purposes, "next friend" standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another. Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on

whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest. The burden is on the "next friend" clearly to establish the propriety of his status and thereby justify the jurisdiction of the court.

495 U.S. at 163-64 (internal citations omitted). In explaining the rationale for constraining who may serve as next friend, the Court stated that "[t]hese limitations on the 'next friend' doctrine are driven by the recognition that it was not intended that the writ of habeas corpus should be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends." *Id.* at 164 (internal quotation omitted). "Indeed," the Court added, "if there were no restriction on 'next friend' standing in federal courts, the litigant asserting only a generalized interest in constitutional governance could circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" *Id.*

### III.

Because it is undisputed here that Hamdi meets the first prong of *Whitmore* as a result of his inaccessibility, we must decide whether the balance of the *Whitmore* test requires a significant relationship between the would-be next friend and the real party in interest. The government argues that *Whitmore* requires a significant relationship, and that the Public Defender and Peregrim lack such a relationship. For example, the government stresses that "the Public Defender has not asserted that he has any relationship whatever with the detainee. He has utterly failed to allege, let alone 'clearly . . . establish' (*Whitmore*, 495 U.S. at 164), any meaningful relationship between himself and the detainee." Quoting *Sanchez-Velasco v. Secretary of Department of Corrections*, 287 F.3d 1015, 1026 (11th Cir. 2002), the Public Defender responds that "[t]he requirement that the putative 'next friend' have some significant relationship with the real party in interest is not necessarily an independent requirement, but instead 'may be one means by which the would-be next friend can show true dedication to the best interests of the person on whose behalf he seeks to litigate.'"

The Public Defender does not contest the government's contention that he had no relationship whatever with the detainee — let alone "some significant relationship" — before seeking to insert himself in the public controversy over Hamdi's detention. In addition, Peregrim has conceded that he too had no relationship at all with the detainee. Accordingly, our answer to the significant-relationship question is dispositive of our inquiry in these cases. And having considered the relevant case law and the arguments of counsel, we conclude that the significant-relationship inquiry is in fact an important requirement for next friend standing. We need not decide just how significant the relationship between the would-be next friend and the real party in interest must be in order to satisfy the requirements for next friend standing. It suffices here to conclude that no preexisting relationship whatever is insufficient.[3]

### A.

To begin with, this conclusion is truest to the language of *Whitmore* itself. The first prong of the next friend standing inquiry disposed of that case because the purported next friend had failed to show that the prisoner was unable to proceed on his own behalf. 495 U.S. at 165-66. Nevertheless, the Court thought it important to begin by stating that there are "*at least two* firmly rooted prerequisites for 'next friend' standing," *id.* at 163 (emphasis added), thereby suggesting that there may be more. And after specifying the first two requirements, the Court went out of its way to observe that "it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* at 163-64 (citing *Davis v. Austin*, 492 F. Supp. 273, 275-76 (N.D. Ga. 1980) (denying minister and first cousin of prisoner next friend standing)).

*Whitmore* is thus most faithfully understood as requiring a would-be next friend to have a significant relationship with the real party in interest. This is certainly the view taken by a number of our sister circuits. For example, the Ninth Circuit has held that a would-be next friend must have some significant relationship with the real party in

---

[3]In holding a significant relationship to be a requirement for next friend standing, we reserve the case of someone who possesses no significant relationships at all.

interest. *See Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001) (reading *Whitmore* as requiring that "the next friend ha[ve] some significant relationship with, and [be] truly dedicated to the best interests of, the petitioner"); *id.* at 1199 n.3; *see also, e.g.*, *T.W. v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997) ("[i]t follows, as the Court suggested in the *Whitmore* case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend — that he 'must have some significant relationship with the real party in interest'"); *Amerson v. Iowa*, 59 F.3d 92, 93 n.3 (8th Cir. 1995) (under *Whitmore*, the "next friend has [the] burden to establish . . . that she has some significant relationship with [the] real party in interest"); *Zettlemoyer v. Horn*, 53 F.3d 24, 27 n.4 (3d Cir. 1995) (observing that "[t]he *Whitmore* Court also . . . suggested that the party 'must have some significant relationship with the real party in interest'"). And although the Eleventh Circuit opinion upon which the Public Defender relies expressed some question as to whether a significant relationship is an independent requirement, even the Eleventh Circuit did not dismiss its importance in next friend standing inquiries. *See Sanchez-Velasco*, 287 F.3d at 1026-27 (discussing cases).

### B.

Requiring a would-be next friend to have some significant, preexisting relationship with the real party in interest also best respects the rationale of the *Whitmore* decision. If we were to grant a supposed next friend access to federal court in the absence of such a relationship, we would be opening the floodgates of federal litigation to the very "intruders or uninvited meddlers, styling themselves next friends," *Whitmore*, 495 U.S. at 164, about whom the Supreme Court expressed great concern. *See, e.g.*, *Brophy*, 124 F.3d at 896 (noting that without restricting the right to sue to persons with "concrete stakes" in the litigation, "the federal courts [would] be flooded by 'cause' suits (*really* flooded)").

We do not doubt the sincerity of the Public Defender, and we do not question whether he is "truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Id.* at 163-64. But absent a requirement of some significant relationship with the detainee, there is no principled way to distinguish a Public Defender from someone

who seeks simply to gain attention by injecting himself into a high-profile case, and who could substantiate alleged dedication to the best interests of the real party in interest by attempting to contact him and his family. Indeed, the Public Defender cannot be treated differently from all other citizens in this regard because some judicial districts do not even have a Public Defender. Moreover, the Public Defender has conceded that even he may end up being just the sort of uninvited presence that troubled the *Whitmore* Court. In proceedings before the district court, he stated: "And guess what? It's quite possible that this man could tell me, look, you're a Christian infidel, I don't want to talk to you, I don't know why you filed this petition for me, I'm not interested."

The requirement of a significant relationship is thus connected to a value of great constitutional moment. Allowing the Public Defender to serve as Hamdi's next friend in the absence of any prior relationship with Hamdi himself would run afoul of the Court's warning in *Whitmore* that "if there were no restriction on 'next friend' standing in federal courts, the litigant asserting only a generalized interest in constitutional governance could circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" 495 U.S. at 164.

That Article requires that a plaintiff have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). The significant-relationship requirement goes a long way towards ensuring the existence of "such a personal stake" in next friend standing cases as well. One who has some significant relationship with the real party in interest is much more likely to experience the real party's injury in fact in a personal way. One with no significant relationship, by contrast, is much more likely to be utilizing the real party's injury as an occasion for entry into policy-laden proceedings of all sorts.

We are no more persuaded than was the *Whitmore* Court by the argument that next friend standing requirements are unnecessary because the real party in interest, in this case Hamdi, meets the Article III requirements on his own. If this suggestion were true, it would

necessitate abandoning any restraints on next friend standing entirely. There must be a middle ground between allowing no one to serve as a next friend, and allowing anyone to serve. Next friend standing doctrine provides a limited avenue into federal court for someone who does not meet Article III's standing requirements. To say that putative next friends may be anyone in the universe of interested persons would encourage those with strong views to seek in federal court what they could not otherwise obtain — namely, the vindication of objectives better suited to political than judicial resolution.

We do not suggest that the habeas petition filed by the Public Defender challenging the government's detention of Hamdi as an enemy combatant was motivated by such concerns. Rather, the point is that there exists a significant danger that such a purpose will be paramount in next friend filings untethered from any requirement that a prior relationship with the real party in interest exist. Indeed, Peregrim's case provides a tangible illustration of the risks. In his letter filed June 7, he stated:

> I have no prior existing relationship with petitioner YASSER ESAM HAMDI and have filed the above petition out of concern only for the unlawful nature of his incarceration. As a citizen born in the United States, it is my responsibility as much as any of my fellow citizens to uphold the law not only as it is written but as it was intended by the fathers of the Constitution.

However well-intentioned Peregrim's actions may be, his rationale for filing a habeas petition on Hamdi's behalf is not consonant with Article III. The Supreme Court emphasized in *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974), that the "generalized interest of all citizens in constitutional governance" does not confer Article III standing. *Id.* at 217. While both the Public Defender and Peregrim may protest the government's decision to detain Hamdi as an enemy combatant, there are limits to which the conduct of war may be reduced to the medium of litigation, limits set in this case by the jurisdictional constraints under which we work.

We do not have here the situation of someone who has no significant relationships. If we did, this might be a different case. But the

absence of a connection to Hamdi on which the Public Defender and Peregrim attempted to proceed stands in stark contrast to the close familial connection that was right around the corner. The Public Defender was apparently in contact with Hamdi's father at the time he filed suit. Not until after oral argument in this court, however, did the father file a separate habeas action styling himself, and not the Defender, as next friend.[4] A next friend with close familial ties brings an action far closer to the rubric of a traditional lawsuit than the prospect of attorneys and private citizens venturing into federal court from across the street. We are not saying that an attorney can never possess next friend standing, or that only the closest relative can serve as next friend. We simply note the contrast here between the Public Defender and Peregrim's suits on the one hand, and the action of the detainee's father on the other.

When viewed in light of the values served by Article III, there is all the difference in the world between a next friend who represents the interests of someone with whom he has a significant relationship and a next friend who files suit on behalf of a total stranger. Allowing the former to proceed as next friend promotes the values of the law of Article III standing; allowing the latter to do so is in irreconcilable conflict with basic constitutional doctrine.

## IV.

The question of next friend standing is not merely "technical," as the district court surmised. Rather, it is jurisdictional and thus fundamental. The Court in *Whitmore* rejected the idea of employing "notions of what might be good public policy to expand our jurisdiction in an appealing case." 495 U.S. at 161. Because neither the Public

---

[4]The government has not agreed to dismiss its appeal in view of the father's petition, and, indeed, neither party has filed a suggestion of mootness. Because the father's case is still pending, judicial relief here has not been rendered unnecessary. *See, e.g.*, Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533 (2d ed. 1984). Further, we note the critical difference between the Public Defender's directing this litigation as next friend in the appeal at bar, and his serving as counsel at the direction of the next friend in the father's case.

Defender nor Peregrim has any prior relationship whatever with Hamdi, each fails to satisfy an important jurisdictional prerequisite for next friend standing. And because "[a] federal court is powerless to create its own jurisdiction," *Whitmore*, 495 U.S. at 155-56, it follows that neither this court nor the court below possesses any authority to entertain the habeas petitions they have filed on behalf of the detainee. Jurisdictional limitations have their roots in the respect courts owe the other branches of our government. The structural restraints of separation of powers are important and serve in their own fashion to safeguard the sacred charter of our rights.

For the foregoing reasons, the access order of the district court is reversed, and the cases filed by the Public Defender and Peregrim are remanded with directions that they be dismissed for want of subject matter jurisdiction.

*REVERSED AND REMANDED*